**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FICARE FEDERAL CREDIT UNION,

Plaintiff,

Case No. 8:26-cv-00231-JLB-GDP

v.

FISERV SOLUTIONS, LLC f/k/a
FISERV SOLUTIONS, INC., and
FISERV, INC.,

Defendants.
_____________________________________/

**DEFENDANTS FISERV SOLUTIONS, LLC'S AND FISERV, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Fiserv Solutions, LLC ("Fiserv") and Fiserv, Inc. (the "Defendants") submit this reply in support of their motion to dismiss (ECF No. 47, the "Motion") Plaintiff's Second Amended Complaint (ECF No. 45, the "SAC").

## INTRODUCTION

FiCare's opposition (ECF No. 53 ("Opp.")) confirms FiCare's attempt to rewrite the parties' Agreement to require security features FiCare now prefers, but for which it did not contract. In its third bite at the apple, FiCare again changes its arguments and theories—now asking the Court to defer dispositive contract interpretation until after discovery because the Agreement is purportedly "ambiguous," revamping its "reliance" allegations and completely retooling its trade secret claims.[1] This constant bobbing and weaving will not save FiCare's claims. They should be dismissed with prejudice and without further amendment.

## ARGUMENT

### I. FICARE'S CONTRACT CLAIMS FAIL.

#### A. The Agreement is Not Ambiguous.

Unable to refute Fiserv's straightforward, text-based interpretations of the

[1] FiCare mischaracterizes two cases involving Fiserv. Neither is relevant. *Bessemer System Federal Credit Union v. Fiserv Solutions, LLC*, 472 F. Supp. 3d 142 (W.D. Pa. 2020), involved materially different factual allegations, a different contract, different legal theories, and, for the fraud claim, turned on a specific email sent by Fiserv in response to a specific question. *Id.* at 165. Those alleged facts bear no resemblance to the alleged fraud here. In *POLAM Federal Credit Union v. Fiserv Solutions, LLC*, No. 2:26-cv-02352-JFW-DFM (C.D. Cal. June 18, 2026) (ECF No. 56), the order did not substantively analyze the arguments raised in this action. Neither alters what the Agreement says here.

Agreement, FiCare argues that Sections 3 and 4 are ambiguous. Section 3(b) is a standard confidentiality provision; Section 4(a) states that Fiserv will maintain an information security program. The text is unambiguous. FiCare offers only the blithe statement that the Sections "could suggest more than one meaning." (Opp. at 6.) But the "mere assertion that contract language means something other than what is clear when read in conjunction with the whole contract is not enough to create an ambiguity[.]" *New York State Ct. Officers Ass'n v. Hite*, 851 F. Supp. 2d 575, 579-80 (S.D.N.Y.), *aff'd*, 475 F. App'x 803 (2d Cir. 2012) (citation modified).

FiCare's new argument is irreconcilable with its own allegations. The SAC alleges these very same provisions impose clear, definite obligations: "Section 3(b) . . . *requires* Fiserv to" implement FiCare's preferred form of MFA, and that "Section 4(a) . . . *requires* Fiserv to implement and maintain an information security program" meeting FiCare's preferred objectives. (SAC, ¶¶ 28(a)-(b).)

FiCare's assertion of "ambiguity" does not raise a factual dispute that saves its claims from dismissal. Whether a contract is ambiguous is not a question of fact but a "threshold question[] of law to be determined by the court and suitable for disposition on a motion to dismiss." *Psenicska v. Twentieth Century Fox Film Corp.*, 2008 WL 4185752, at *4 (S.D.N.Y. Sep. 3, 2008), *aff'd*, 409 F. App'x 368 (2d Cir. 2009). It is this Court's role at this stage to determine whether the Agreement is ambiguous, and, since it is not, dismiss FiCare's claims. *Id.*

**B. FiCare Does Not Plausibly Allege Breach of Sections 3(b) or 4(a).**

Section 3(b) is a standard confidentiality provision imposing identical, reciprocal obligations on both parties. (Motion, Ex. 1 ("Agreement"), at 3-4, § 3(b).) FiCare ignores its plain language and asks the Court to interpret the provision as a sweeping information-security warranty. That would eviscerate the Agreement's twelve Schedules and Exhibits that define the features (including security features) of the products and services for which FiCare contracted. FiCare insists there is no conflict between its interpretation of Section 3(b) and the specific features it contracted to receive in these schedules because every option was "noncompliant." (Opp. at 7.) As FiCare would have it, Fiserv was in breach on day one by providing the very services specified in the Agreement.

Section 4(a) requires Fiserv to implement and maintain an information security program "*designed to meet*" several objectives. (Agreement at 4, § 4(a).) FiCare would rewrite Section 4(a) to *require* Fiserv to meet FiCare's subjective security objectives for every aspect of every product. Such a strict liability warranty is irreconcilable with the Agreement's plain language and foreclosed by the warranties Fiserv expressly disclaimed. (*See id.* at 6, § 6(c).)

FiCare's attempt to supplant the Agreement's specific security and authentication provisions with a single sentence in a confidentiality clause and by rewriting Section 4(a) violates multiple, black-letter, interpretive canons, including

that contracts must be read as a whole, *POSCO Energy Co. v. FuelCell Energy, Inc.*, 560 F. Supp. 3d 747, 754 (S.D.N.Y. 2021), specific provisions govern over general ones, *In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 290 (S.D.N.Y. 2021), and interpretations may not render terms superfluous, *Napster, LLC v. Rounder Recs. Corp.*, 761 F. Supp. 2d 200, 206 (S.D.N.Y. 2011). FiCare ignores these canons, boldly arguing that *Fiserv's* reading would "render" Section 3(b) (and 4(a)) "meaningless." (Opp. at 8.) Precisely the opposite is true.

**C. FiCare Does Not Plausibly Allege a Breach of Section 4(e)(iv).**

Section 4(e) of the ASP Services Agreement contains four warranties – three relate to Services that FiCare represented it had independently evaluated (Agreement at 6, § 6(c)); and one relates to *Fiserv's internal systems.* (*Id.* at 10-11, § 4(e).) Undeterred by the Agreement's plain language, FiCare argues this Section makes a blanket regulatory representation about the technical features of the Services. That reading makes surplusage out of the Agreement's product-specific Schedules and FiCare's representation that it independently evaluated the Services and confirmed they satisfy its needs. *See In re AMR Corp.*, 730 F.3d 88, 98 (2d Cir. 2013).

FiCare also argues against a strawman by contending the appropriate inquiry turns on FiCare's regulatory compliance.[2] Regardless, FiCare still has not

[2] FiCare invokes a similar strategy in response to Fiserv's discussion of the clear allocation of risk

identified a regulation that *mandates* the authentication features it now demands, claiming this is somehow a fact issue. It is not.

### D. FiCare's Claim Concerning Enhanced Authentication Fails.

"Enhanced Authentication" is the name of a Fiserv security product with specific features that FiCare purchased via the Agreement. FiCare does not allege that Fiserv failed to provide those specific features. Instead, FiCare pretends that Fiserv promised to "enhance" other (unidentified) "authentication" methods that FiCare apparently deems superior and contends that Fiserv "breached" that (non-existent) promise. Enhanced Authentication is the product FiCare purchased. Fiserv did not represent, warrant, or promise that Enhanced Authentication would include the forms of MFA that FiCare now demands.

## II. FICARE'S FRAUD CLAIMS FAIL AS A MATTER OF LAW.

### A. FiCare Does Not Plausibly Allege a Misrepresentation.

To support its fraud claim, FiCare's opposition relies heavily on Fiserv's alleged answer of "Yes" in response to the question: "Is Multi-Factor Authentication (MFA) utilized?" (SAC, ¶¶ 31, 113.) As FiCare's own opposition concedes, that answer was indisputably true. (Opp. at 18-20.) FiCare concedes that Fiserv utilizes MFA for multiple products, including the Portico core. FiCare

---

set forth in the Virtual Branch and Mobiliti Schedules. Despite its discussion about which party is responsible for which type of authentication, FiCare fails to address its unambiguous agreement that FiCare "is and shall remain solely and exclusively required for any and all financial risks." (Motion, Ex. 2 at 5, § 3(a)(vii).)

cannot change the question to whether Fiserv utilizes MFA on every product, for every application, at all times, to manufacture a "fraud."

**B. FiCare Does Not Plausibly Allege Reliance.**

FiCare does not allege, and its opposition does not identify, that any particular FiCare representative saw Fiserv's purported "misrepresentations," actual dates of receipt, review, or reliance, how FiCare relied on such representations, or what specific decisions were made in reliance. The absence of these basic factual allegations means FiCare has not plausibly alleged reliance.

FiCare tries to avoid this fundamental deficiency by claiming "continuing reliance" and asserting it relied on Fiserv's compliance materials "throughout an ongoing vendor relationship" by continuing to use Fiserv's services. (Opp. at 20.) But that would still require that someone at FiCare actually reviewed the particular statements and specifically relied on them in deciding not to terminate the Agreement for cause or convenience. There are no such allegations in the SAC and certainly none that make that theory plausible. FiCare became a Fiserv client in 2013, long before the documents at issue existed.[3] And, as of the date of its July 3, 2025, demand letter, FiCare already had decided to terminate. (*See* SAC, Ex. 9.) FiCare cannot replead its reliance theory through its opposition brief, *see Manchester v. George*, 2026 WL 538406, at *8 (M.D. Fla. Feb. 26, 2026), and still fails

[3] The Enterprise Risk Management, Security and Privacy Program Overview is dated April 2019, the SIG Questionnaire is dated April 2023, and the Cybersecurity Fact Sheet is dated 2025.

to identify the who, what, when, and how of its purported reliance. This fundamental deficiency also requires that FiCare's FDUTPA claim be dismissed.

## III. FICARE'S DTSA CLAIM FAILS.

FiCare's DTSA arguments are a game of whack-a-mole. FiCare now contends that its "compilation of members' financial history and transactions" is a trade secret. (Opp. at 23.) But FiCare has not alleged that Fiserv possesses these "compilations." FiCare conflates the raw transactional data that Fiserv processes under the Agreement with the curated "compilations" it purportedly creates and now contends are trade secrets. And FiCare also has not alleged any facts identifying how it creates these "compilations," much less that such methods are proprietary. Even if FiCare could establish that its compilation methods are trade secrets, that does not make the raw data that Fiserv processes a trade secret.

FiCare's "compilation" theory also means that it has not pleaded misappropriation. FiCare does not (and presumably cannot) allege the "hacks" gave unauthorized parties access to any "compilations." Rather, the SAC specifically alleges that "hackers" accessed *individual online banking accounts*. (SAC, ¶¶ 53-61.) FiCare's machinations to avoid dismissal cannot be squared with the SAC (which represents the third iteration of FiCare's trade secret claims).

## CONCLUSION

For these reasons, the Court should dismiss FiCare's claims with prejudice.

Dated this 15th day of September, 2026.

*/s/ Timothy J. Patterson*

Joseph W. Swanson (Lead Counsel)
(FBN 0029618)
Primary email: joe.swanson@foley.com
Secondary email: dmills@foley.com
Ashley C. Grabowski (FBN 1049290)
Primary email: agrabowski@foley.com
Secondary email: dguillen@foley.com
**Foley & Lardner LLP**
100 North Tampa Street
Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300
Facsimile: (813) 221-4210

Bryan B. House (*pro hac vice*)
Timothy J. Patterson (*pro hac vice*)
**Foley & Lardner LLP**
777 E. Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone: (414)271-2400
Facsimile: (414)297-4900
bhouse@foley.com
tjpatterson@foley.com

Elysia A. Lampert (*pro hac vice*)
**Foley & Lardner LLP**
321 N. Clark St., Suite 3000
Chicago, IL 60654-4762
Telephone: (312)832-4500
Facsimile: (312)832-4700
elampert@foley.com

*Attorneys for Defendants Fiserv Solutions, LLC and Fiserv, Inc.*