**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FICARE FEDERAL CREDIT UNION,

Case No. 8:26-cv-00231-JLB-GDP

Plaintiff,

v.

FISERV SOLUTIONS, LLC f/k/a
FISERV SOLUTIONS, INC., and
FISERV, INC.,

Defendants.
_________________________________ /

## DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION TO EXPEDITE RESPONSES TO DISCOVERY REQUESTS

Defendants Fiserv Solutions, LLC ("Fiserv") and Fiserv, Inc.[1] (collectively "Defendants") respectfully submit this response to Plaintiff's Emergency Motion to Expedite Responses to Discovery Requests (Dkt. 63.) (the "Motion").

## INTRODUCTION

FiCare has spent the past fifteen months trying to manufacture exigency. Each attempt follows a similar pattern. FiCare levels vague, unsubstantiated allegations of a purported security deficiency and demands (outside the ordinary discovery process) that Fiserv immediately turn over reams of data, grant a third-

[1] Fiserv, Inc. is a sole member of Fiserv Solutions, LLC but has no contractual relationship with FiCare nor involvement in the matters relevant to FiCare's claims.

party access to Fiserv's systems, or enact sweeping technical changes to its products and services. Absent capitulation, FiCare threatens to seek an emergency order, usually a TRO. Fiserv—which, despite FiCare's allegations, takes its clients' security concerns seriously—devotes substantial time and resources to promptly addressing FiCare's purported concerns, while reminding FiCare's counsel that such technical discussions are best suited for direct business communication. After Fiserv responds, FiCare declines to ask follow-up questions, provide information that Fiserv requests, or engage with Fiserv's proposed next steps.

This time, FiCare claims bad actors can call into Fiserv's call center and lift fraud restrictions on members' cards without being properly authenticated. (This new "claim" is not alleged in any of the three complaints FiCare has filed to date.) According to FiCare, this leaves its members vulnerable to card fraud and constitutes an "emergency." FiCare first raised this issue on September 17—not by contacting Fiserv directly, but by serving four interrogatories, seven requests for production, and eight requests for admission. Defendants promised to gather and provide FiCare with information related to this issue but did not agree to respond to the discovery requests on an "expedited" basis. In response, FiCare, without conducting the meet and confer required by Local Rule 3.01(g), filed the Motion, seeking to compel Defendants to respond to the discovery requests on an expedited timeframe while also compelling certain responses to those requests.

Fiserv has since provided FiCare with the promised information. As explained in that update, FiCare's understanding of the call center is incorrect, and there is no urgent security concern. Fiserv's call center employs layered authentication procedures designed to verify caller identity before any account action is taken. If FiCare wanted different authentication procedures—*e.g.*, verification of callers through a One-Time-Passcode (OTP) delivered via email, text, or voice call—that option was available. Remarkably, ***FiCare had previously chosen not to enable that feature***. After Fiserv reminded FiCare of this option, FiCare asked that it be enabled, alleviating any genuine security concern, resolving any purported basis for filing the Motion as an "emergency," and highlighting why FiCare's concerns are best resolved through direct business communications.

FiCare nevertheless refused to withdraw the Motion (and has now also threatened to seek a TRO or other emergency injunctive relief). The Motion should be denied. The Motion is improperly labeled as an "emergency" and fails to satisfy Local Rule 3.01(g)'s meet and confer requirement. And FiCare has not met its burden to show good cause warranting expedited discovery in any event.

## BACKGROUND

### I. FICARE IS MANUFACTURING EMERGENCIES, NOT PROSECUTING ITS CLAIMS.

FiCare has been a Fiserv client since 2013. (*See* 2013 Master Agreement (the "Agreement"), Dkt. 63-2.) For twelve years, FiCare never once claimed an

"emergent" security concern existed regarding the features applicable to Fiserv's products. Since engaging counsel, however, FiCare has manufactured multiple purported "emergencies," each with threats to pursue temporary and preliminary injunctive relief if Fiserv does not immediately yield to its demands. All the while, FiCare has ignored the claims it pleaded and has not served a single discovery request related to the products and services its pleadings allege are deficient. (Declaration of Timothy Patterson ("Patterson Dec.") ¶ 3.) FiCare is not interested in litigating the merits of this case; rather, FiCare would prefer to engineer costly and time-consuming "emergency" disputes as perceived leverage.

FiCare's tactics for the past fifteen months confirm this. On July 3, 2025, with no prior discussions between the parties, FiCare's counsel sent Defendants a demand letter, complaining for the first time of a lack of multi-factor authentication ("MFA") on various products, declaring a material breach of the Agreement, and announcing that FiCare would seek emergency injunctive relief if Defendants did not meet its "demands" through a "consent injunction" by July 7, 2025.[2] (*Id.* ¶ 4 & Ex. 1.) Defendants' counsel promptly provided FiCare with a proposal designed to alleviate FiCare's purported concerns and avoid unnecessary proceedings; FiCare never responded. (*Id.* ¶ 5.) Defendants also gathered

[2] This was not an isolated incident. Since May 2025, FiCare's counsel, Mr. Nerko, has sent over twenty demand letters to Defendants on behalf of various credit unions. (Patterson Dec. ¶ 8.) These other demand letters are largely a cut and paste of the one precipitating this litigation. (*Id.*)

information related to the demand letter's allegation that months earlier, in 2024, a few members had experienced fraudulent ACH transactions (the "2024 Security Incident") and provided that information to FiCare.[3] (*Id.* ¶ 6 & Ex. 2.) FiCare never responded. (*Id.* ¶ 7.)

FiCare filed its complaint on January 27, 2026. (Complaint, Dkt. 1.) The next day, FiCare's counsel asked "if Fiserv will consent to provid[ing] expedited discovery to FiCare in advance of it filing its [preliminary injunction] motion." (Patterson Dec. ¶ 9 & Ex. 3.) Defendants' counsel asked for basic information concerning the scope of that "expedited discovery," as well as a description of the "particular injunctive relief" FiCare intended to pursue. (*Id.*) FiCare responded only that the sought-after discovery would be "limited to what is relevant and proportional to the Rule 65" standard and refused to articulate its proposed injunction. (*Id.*) Despite the exigent circumstances that supposedly existed in late January, FiCare never sought the threatened expedited discovery or emergency injunctive relief.

In March 2026, FiCare sent Defendants a "Supplemental Notice of Breach" alleging that a FiCare member suffered an $8,000 loss following a "hack perpetrated by an unknown individual" (the "2025 Security Incident"). (*Id.* ¶ 10 &

[3] Ashley Magill's sworn statement that FiCare "still has not received Fiserv's findings" on the 2024 Security Incident is incorrect. (Magill Declaration ¶ 14.) Fiserv provided that information to FiCare's counsel on August 21, 2025. (Patterson Dec. ¶ 6 & Ex. 2.)

Ex. 4.) Fiserv responded the same day, requesting basic information, including the date of the "hack," the impacted products or services, the circumstances of the incident, and substantiation of FiCare's alleged loss. (*Id.* ¶ 11 & Ex. 5.) FiCare refused to provide this information and instead threatened to "seek appropriate injunctive relief and expedited discovery" unless Fiserv "confirm[ed] immediately" that it would "provide all information in its possession relating to this incident and the prior FiCare hacks and permit FiCare's expert to conduct an inspection of these systems."[4] (*Id.*) Fiserv reviewed the incident (to the extent possible without FiCare's cooperation) and shared its findings with FiCare in early April 2026. (*Id.* ¶¶ 12–13 & Ex. 6.) Again, FiCare never responded.[5] (*Id.* ¶ 14.)

Additional examples abound. FiCare threatened to file an emergency injunction motion or demanded that Fiserv immediately agree to a "consent injunction," at least four other times this year: on April 20, April 24, May 14, and May 19. (*Id.* ¶¶ 15–17 & Exs. 7–8.) Each threat or demand made unsubstantiated allegations that Fiserv's products and services created imminent security risks.

[4] On June 26, 2026, FiCare served a notice of inspection on Defendants, which requested "that Defendants permit Plaintiff's agents entry onto any systems used to store, process, or transmit Plaintiff's information so Plaintiff's agents may inspect, measure, survey, photograph, test, or sample this property, its objects, and operations." (Patterson Dec. ¶ 18 & Ex. 9.) Defendants served objections to this improper and overbroad notice and refused to permit this inspection. (*Id.* ¶ 19 & Ex. 10.) FiCare has not pursued the issue further. (*Id.* ¶ 19.)

[5] Again, Ms. Magill's sworn statement that FiCare "still has not received Fiserv's findings" on the 2025 Security Incident is incorrect. (Magill Declaration ¶ 14.) Fiserv provided that information to FiCare's counsel on April 8, 2026. (Patterson Dec. ¶ 13 & Ex. 6.)

(*Id.*) Each time, Fiserv offered to engage in business-to-business discussions about FiCare's purported concerns. (*Id.*) FiCare rebuffed each offer. (*Id.*)

## II. THE MOTION FOLLOWS THE SAME PATTERN.

This Motion presents the same kind of manufactured "emergency," only now FiCare has also burdened the Court. On September 17, FiCare's counsel served Defendants with discovery requests (the "Requests"). (Dkt. 63-4.) The email accompanying service asserted that FiCare "recently learned that fraudsters are bypassing Fiserv's call center verification procedures to remove fraud restrictions and reactivate stolen cards," that "[a]t least 18 fraudulent transactions have occurred in August at FiCare, and that "[t]he recent fraud and continuing risk to our client (and other Fiserv financial institution customers) warrants expedited responses" to the Requests. (Patterson Dec. ¶ 22 & Ex. 11.) The email closed with the following:

> Please let us know by 3pm tomorrow how soon Fiserv can respond substantively to these limited requests, and your availability to meet and confer on these requests and any security mitigations Fiserv can implement to prevent further fraud being facilitated by its call center. We would prefer to agree on a reasonable expedited timetable to receive Fiserv's responses and assurances. If we cannot, we intend to ask the Magistrate Judge to compel expedited responses, and our client may seek appropriate injunctive relief. Thank you.

(*Id.*) The Requests consist of four interrogatories, seven requests for production, and eight "emergency" requests for admission. (Dkt. 63-4.) As best Fiserv can tell, the genesis of these Requests was an unverified discussion on an email list serv,

titled "Portico Talk," wherein a few *other credit unions* raised questions about the authentication procedures available for Fiserv's call center service.[6]

Defendants' counsel responded the next day, confirming receipt and informing FiCare's counsel that Fiserv was "in the process of gathering more information," would "share [the] findings…once finalized," and would likely have some questions for FiCare on the issue. (Patterson Dec. ¶ 22 & Ex. 11.) As to the Requests themselves, Defendants' counsel wrote: "we do not agree to answer these requests on an expedited basis, but we will informally provide you whatever information we can gather as soon as practicable." (*Id.*) FiCare's counsel responded with a "thank you" and did not suggest a time to discuss the matter as Fiserv investigated. (*Id.*)

Fiserv promptly began gathering the facts necessary to provide FiCare the promised information. (*Id.* ¶ 21.) On September 24, Fiserv provided that information. (*Id.* ¶ 22 & Ex. 11.) Unfortunately, FiCare decided not to wait for Fiserv's response and filed the Motion two days earlier.[7] (*Id.* ¶ 23.)

---

[6] Fiserv maintains this online community to enhance the experience of its credit union clients by permitting them to exchange observations, ideas, and areas for improvement. FiCare has unfortunately chosen to weaponize this benefit for litigation purposes and, indeed, went so far as to name publicly other credit unions who were involved in the discussion. It appears this was done without any notice to or the consent of these other credit unions; at least one has received unwanted press inquiries as a result of being specifically named in the Motion and expressed disappointment and concern to Fiserv that FiCare injected it into this dispute.

[7] Not coincidentally, two hours after the Motion was filed, the Credit Union Daily posted an article announcing the Motion that included a quote from FiCare's counsel, Mr. Nerko.

In its September 24 email to FiCare, Fiserv's counsel described the call center's authentication process.[8] (*Id*. ¶ 24.) Fiserv's counsel also reminded FiCare that it had the option to configure the call center to employ authentication through OTP, but that FiCare had chosen not to enable that feature. (*Id*; *see also* Declaration of Charlene Benn ("Benn Dec.") ¶¶ 6–7.) Fiserv offered to enable OTP at FiCare's request. (Patterson Dec. ¶ 22 & Ex. 11.) Finally, Fiserv's counsel sought certain information regarding the claimed "18 fraudulent transactions," so Fiserv could identify the transactions and related case details and pursue additional inquiry as needed. (*Id*.) Regarding the Motion, Fiserv's counsel noted that FiCare had failed to comply with the meet and confer requirement and requested that FiCare withdraw the Motion so the parties could confer. (*Id*.) In response, FiCare asked Fiserv to enable the OTP feature but refused to withdraw its motion or provide more information about the "18 fraudulent transactions." (*Id*.)

---

https://thecudaily.com/ficare-fcu-files-emergency-motion-seeking-records-from-fiserv-alleges-18-fraudulent-transactions-have-occurred/; *see also, e.g.*, https://www.cutoday.info/Fresh-Today/CU-Says-Fraudsters-Bypassed-Fiserv-Safeguards-Unlocked-Stolen-Cards. If the Motion were motivated by genuine security concerns, FiCare would have avoided a publicly filed announcement of this alleged vulnerability, which essentially provides instructions on how to target its members. The coordinated media campaign reveals what the Motion is really about.

[8] Because the September 24 email provides details concerning the security features relating to Fiserv's call center, Defendants' counsel redacted this portion of the email in Exhibit 13 to Timothy Patterson's declaration. Should the Court wish to review the September 24 email, Defendants will file the email as a supplemental exhibit with a corresponding motion to seal.

## ARGUMENT

### I. FICARE'S MOTION IGNORES THIS COURT'S RULES AND SHOULD BE DENIED.

"It is fundamentally wrong to characterize a matter as an emergency when it obviously is not an emergency." *Privitera v. Amber Hill Farm, L.L.C.*, 2012 WL 1900559, at *2 (M.D. Fla. May 24, 2012); *see also* M.D. Fla. L.R. 3.01(f) ("The unwarranted designation of a motion as an emergency can result in a sanction."). That is the case here. The Motion does not reflect "a true emergency": "[n]o one's health or safety is at stake, nobody is at risk of being deprived of an essential service, and nothing that is irreplaceable or for which compensation would not be available is in jeopardy." *Privitera*, 2012 WL 1900559, at *2. This is not a situation where a person is facing deportation, civil rights violations, or imminent death—all truly emergent situations that come through this Court's docket.

The allegation underlying FiCare's claim that this Motion presents an emergency—that the verification procedures employed at FiCare's call center are "readily bypassed" because they "do not employ multi-factor authentication"—is untrue. (*See* Motion at 2, 4.) Ms. Magill's supporting declaration suggests the basis for this assertion is her speculation in response to unsubstantiated (and incorrect) rumors on an email list serv. (*See generally* Magill Declaration, Dkt. 63-1.) In fact, as already communicated to FiCare, callers seeking to unfreeze cards subject to fraud restrictions through the call center are subjected to layered authentication

procedures. (Patterson Dec. ¶ 24.) And if FiCare wanted the call center to verify callers through delivery of an OTP to the cardholder, that option was available to FiCare; it was FiCare that elected not to enable it. (Benn Dec. ¶¶ 6–7; Patterson Dec. ¶¶ 22, 24 & Ex. 11.) Further, although Fiserv works closely with its clients to minimize the risk of fraud, credit card theft and fraudulent transactions do occur in the financial services industry. And should they occur, the cardholder may report the card as stolen and immediately deactivate it; this deactivation cannot be reversed, through the call center or otherwise. (Benn Dec. ¶ 8.)

FiCare's insistence that the Motion be treated as an "emergency," like its insistence that Defendants respond to its Requests on an expedited basis, serves only to impose burden and expense on Defendants and the Court. *Privitera*, 2012 WL 1900559, at *2 ("Whenever someone files an 'emergency' motion the Court drops whatever it is working on to give the motion its full attention. Presumably, opposing counsel does the same thing."). This abuse should not be rewarded, particularly since FiCare failed to comply with its duty to confer in good faith. *See* M.D. Fla. Local Rule 3.01(g). FiCare's Rule 3.01(g) certification provides that counsel "attempted to confer with counsel for Fiserv by email." FiCare apparently bases this assertion on the fact that its initial email serving the Requests "asked Fiserv to provide its availability to meet and confer" and Fiserv's response did not provide that availability. (Motion at 13.) But Fiserv had no reason to believe that

providing its availability was necessary, given its ready agreement to "informally provide" FiCare "whatever information we can gather as soon as practicable." (Patterson Dec. ¶ 22 & Ex. 11.) FiCare responded with a mere "thank you": it did not inform Fiserv that its position was unacceptable, ask to meet and confer on the Requests, or state that it intended to file the Motion. (*Id.* ¶¶ 22–23 & Ex. 11.)

Instead, FiCare proceeded to file the Motion without waiting for information from, or further discussion with, Fiserv, and without complying with the local rules. (*Id.* ¶ 23.) This Court's order prohibits this conduct:

> For anything other than joint or unopposed motions, the term "confer" requires a substantive conversation in person, by telephone, or via videoconference. It does not envision an exchange of ultimatums by email or letter. Counsel who merely tries to confer has not "conferred."

Case Mgmt. Order, Dkt. 39, at D(1); *see also* Middle District Discovery Handbook at 2 ("The term 'confer' in Rule 3.01(g) means a substantive discussion."); *Selectica, Inc. v. Novatus, Inc.*, 2014 WL 1930426, at *2 (M.D. Fla. May 14, 2014) ("Counsel who merely 'attempt' to confer have not 'conferred.'").

This alone is grounds to deny the Motion. "Rule 3.01(g) is strictly enforced" and "[a] motion that does not comply with the rule may be summarily denied." Handbook at 2; *see also, e.g.*, *Doe v. Platinum Props. Inv. Network, Inc.*, 2018 WL 6983484, at *2 (M.D. Fla. Dec. 13, 2018) ("Motions are routinely denied for failure to comply with Local Rule 3.01(g)."). The Motion concerns the technical

authentication features employed by Fiserv's call center and the configuration FiCare chose—a dispute best resolved through open and direct communication between the parties. In fact, since the filing of the Motion, Defendants have narrowed this dispute by reminding FiCare of its ability to configure the call center to employ OTP—which FiCare has now requested. (Patterson Dec. ¶ 22 & Ex. 11.) FiCare should not be rewarded for bypassing the local rules and sprinting to court so that it could create perceived leverage and media attention. The Court should deny the Motion and order FiCare to comply with its duty to confer.

## II. FICARE HAS NOT MET ITS BURDEN TO SHOW GOOD CAUSE WARRANTS EXPEDITED DISCOVERY.

"The party seeking expedited discovery bears the burden of demonstrating good cause for departing from the usual discovery procedures." *Ucastv Inc. v. Brandon*, 2014 WL 12575740, at *2 (M.D. Fla. Jan. 15, 2014); *see also, e.g.*, *Osborne Assocs., Inc. v. Cangemi*, 2017 WL 10403343, at *2 (M.D. Fla. Oct. 30, 2017) (collecting factors pertinent to good cause determination); *Parrot, Inc. v. NiceStuff Distrib. Int'l, Inc.*, 2009 WL 10667522, at *3 (S.D. Fla. Jan. 26, 2009) (good cause standard applies to a request to shorten response time). "Generally, expedited discovery should be granted primarily 'when some unusual circumstances or conditions exist that would likely prejudice the party if he were required to wait the normal time.'" *Mullane v. Almon*, 339 F.R.D. 659, 663 (N.D. Fla. 2021). There are no such circumstances here, and FiCare has not shown good cause.

***First***, the Motion does not establish that a security threat exists. FiCare relies on a supporting declaration from Ms. Magill, but her declaration reveals that FiCare's claimed emergency is based on rumors and speculation—not personal knowledge or evidence. It relies on Ms. Magill's "understanding" of the call center's authentication procedures, including that they utilize "knowledge-based questions" and "do[] not use multi-factor authentication." (*See, e.g.*, Magill Declaration ¶ 4.) As Fiserv explained to FiCare last week, this "understanding" is incorrect. Even without the OTP feature that FiCare previously declined to implement (Benn Dec. ¶¶ 6–7), the call center employs authentication features beyond "knowledge-based questions." (Patterson Dec. ¶ 24.) The Magill Declaration also provides no evidence regarding the alleged "18 fraudulent transactions" that "fit" Ms. Magill's (incorrect) understanding of the call center issue. And in keeping with this theme, FiCare has refused Fiserv's request for the information Fiserv needs to inquire into all these allegedly fraudulent transactions. (Patterson Dec. ¶ 22 & Ex. 11.)

***Second***, FiCare's professed desire to gather information to assess whether it *should* seek preliminary injunctive relief does not establish good cause. *See, e.g.*, *Mullane v. Almon*, 339 F.R.D. 659, 666 (N.D. Fla. 2021) (denying expedited discovery plaintiff sought to assist "in determining whether a motion for a preliminary injunction is necessary and/or in the interests of judicial economy");

*Socal Dab Tools, LLC v. Venture Techs., LLC*, 2022 WL 19977793, at *2 (M.D. Ala. Apr. 25, 2022) ("Plaintiffs' contention that they may file a motion for a preliminary injunction and that expedited discovery would assist them in doing so is speculative and insufficient to justify discovery outside the normal course."). FiCare's claim that such expedited discovery "fosters judicial economy" rings hollow here, when the Motion could have been avoided—or at least narrowed—by good-faith conferral, nor does it provide good cause. *Mullane*, 339 F.R.D. at 666. And the case for "good cause" is particularly weak here, given that FiCare has been threatening to pursue injunctive relief for fifteen months.

***Third***, the Motion is easily distinguishable from the other cases FiCare cites for the proposition that courts have ordered Defendants to engage in similar expedited discovery. *See* Motion at 7 (citing *Cencap Fed. Credit Union v. Fiserv*, No. 3:25-cv-00913 (D. Conn.), Dkt. 56 and *Self-Help Credit Union v. Fiserv*, No. 1:25-cv-01112-TDS-LPA (M.D.N.C.), Dkt. 48 at 43). Plaintiff's counsel represents the plaintiffs in *Cencap* and *Self-Help*. In both cases, the court ordered a limited period of discovery only after the plaintiffs had filed motions for a temporary restraining order (both of which were summarily denied) and preliminary injunction.[9]

[9] Plaintiff Self-Help Credit Union ("SHCU") failed to participate in this limited expedited discovery process in good faith, evading Defendants' discovery requests and seeking broad discovery well beyond what the court authorized. Notably, FiCare's CEO submitted a declaration in support of SHCU's motion for injunctive relief but refused to comply with a subpoena issued to FiCare about that declaration. *See Self-Help Credit Union*, Dkt. 9, No. 1:25-cv-01112-TDS-LPA

Neither court ordered that Fiserv respond to discovery on a timeline shorter than that imposed by Fed. R. Civ. P. 34, nor compelled Fiserv to respond to any specific discovery requests. Both plaintiffs had pending preliminary injunction motions at the time those courts permitted a shortened discovery period. *See Capriola Corp.*, 2012 WL 12904412, at *1 (M.D. Fla. Nov. 1, 2012) (noting that "while Plaintiffs *anticipate* filing a motion for preliminary injunction, there currently is no such motion or hearing pending," so "it would be out of the norm to grant expedited discovery" and declining to do so) (emphasis added); *Mullane*, 339 F.R.D. at 666 ("The lack of a pending motion for a preliminary injunction greatly undercuts Plaintiff's assertion that he requires expedited discovery.").

Although FiCare once again *threatened* to seek a TRO and preliminary injunction just last week (Patterson Dec. ¶ 22 & Ex. 11), it has not done so yet—nor does it have any reason to do so beyond a desire to drum up adverse media exposure and create perceived leverage. Indeed, FiCare's threat came *after* Fiserv both provided FiCare the promised information and FiCare requested OTP for the call center. (*Id.*) Even more, unlike the *Cencap* and *Self-Help* cases, this action has

(M.D.N.C.). These tactics led to motion practice, and in May 2026 the court granted in full Defendants' motion to compel SHCU's responses to various discovery requests and Defendants' motion for a protective order precluding SHCU from deposing a high-level Fiserv executive. *See id.*, April 30, 2026 Text Order; May 1, 2026 Text Order. In connection with these motions, the court awarded Defendants' fees, and SHCU paid Defendants $68,279.25 for its litigation tactics. *See id.*, May 21, 2026 Text Order. Just days after these discovery rulings, SHCU withdrew its motion for a preliminary injunction. *See id.*, Dkt. 100.

been pending for nine months. The parties have filed their Rule 26(f) report and are well into discovery, so FiCare has tools available to it should it wish to gather facts. That FiCare has serially amended its complaint and not yet served a single discovery request about its pleaded claims reveals the Motion (and yet another threat of a TRO) as entirely tactical.

***Finally***, the Requests themselves are objectionable. They relate to the alleged call center concern raised in FiCare's September 17 email. (Dkt. 63-4.) The Second Amended Complaint does not even mention Fiserv's call center, much less the specific features that the Requests concern (Dkt. 45), and Defendants intend to object to many of the Requests as overbroad and irrelevant to the claims and defenses at issue. FiCare cannot use this litigation as a vehicle for every future business complaint it has about Fiserv's services. Should it wish to assert additional claims, it should bring a new lawsuit or seek leave to amend its complaint for the third time.

**<u>CONCLUSION</u>**

Defendants respectfully request that this Court deny the Motion in full.[10]

---

[10] Even though FiCare has not hesitated to seek fees and costs, *see e.g.*, Dkt. 58, Defendants prefer to avoid further disputes and briefing and so will not do so here. Defendants, however, reserve the right to change course should FiCare continue its harassing tactics, such as its threatened motion for a TRO. FiCare's conduct has made this dispute needlessly complicated and expensive, a subject Defendants will address at the appropriate time under the Agreement's fee-shifting provision.

Dated this 28th day of September, 2026.

*/s/ Timothy J. Patterson*

Joseph W. Swanson (Lead Counsel)
(FBN 0029618)
Primary email: joe.swanson@foley.com
Secondary email: jwilliams@foley.com
Ashley C. Grabowski (FBN 1049290)
Primary email: agrabowski@foley.com
Secondary email: dguillen@foley.com
**Foley & Lardner LLP**
100 North Tampa Street
Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300
Facsimile: (813) 221-4210

Bryan B. House (*pro hac vice*)
Timothy J. Patterson (*pro hac vice*)
**Foley & Lardner LLP**
777 E. Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone: (414)271-2400
Facsimile: (414)297-4900
bhouse@foley.com
tjpatterson@foley.com

Elysia A. Lampert (*pro hac vice*)
**Foley & Lardner LLP**
321 N. Clark St., Suite 3000
Chicago, IL 60654-4762
Telephone: (312)832-4500
Facsimile: (312)832-4700
elampert@foley.com

*Attorneys for Defendants Fiserv Solutions, LLC and Fiserv, Inc.*