UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FICARE FEDERAL CREDIT UNION,

Plaintiff, No. 8:26-cv-00231-JLB-GDP

v.

FISERV SOLUTIONS, LLC f/k/a
FISERV SOLUTIONS, INC., and
FISERV, INC.,

Defendants.
_______________________________________/

**DECLARATION OF ASHLEY MAGILL**

I, Ashley Magill, declare as follows:

1. I am the Senior Vice President for Lending and Operations of FiCare Federal Credit Union ("FiCare Federal"). I have personal knowledge of the matters set forth below based on my job responsibilities and direct involvement in FiCare Federal's operations and vendor oversight. I submit this declaration in support of FiCare Federal's motion for a temporary restraining order requiring Fiserv to stop using noncompliant authentication procedures at its call center, where security breaches are ongoing.

2. Chartered in 1960, FiCare Federal is a not-for-profit financial institution serving healthcare employees. FiCare Federal currently serves approximately 8,000 members and has over $75 million in assets. FiCare Federal

is chartered and insured by the National Credit Union Administration, a federal government agency.

3. In 2013, FiCare Federal (then known as St. Joseph's Hospital Credit Union) entered into a master agreement with Fiserv (the "Master Agreement"). A true and correct copy of the Master Agreement is attached as Exhibit 1.[1]

4. Under the Master Agreement, Fiserv provides FiCare Federal with a variety of services, including FiCare Federal's online banking website and a 24/7 call center for members to call when their debit and credit cards are flagged for fraud.

5. FiCare Federal's Fiserv-hosted online banking system was hacked repeatedly in 2024 and 2025 because Fiserv failed to properly verify the identities of people logging on. Unauthorized individuals withdrew funds from our members' accounts, causing hundreds of thousands of dollars in fraud losses. FiCare Federal's complaint already alleges that Fiserv's measures to verify users and protect confidential information are inadequate. After FiCare Federal filed its Second Amended Complaint in July, we learned of another security breach at Fiserv—this time at its 24/7 call center.

[1] The Master Agreement has been amended several times since 2013. Those amendments do not bear on the issues in FiCare Federal's motion and are omitted from Exhibit 1.

6. On or about September 16, 2026, I learned that unauthorized callers were circumventing Fiserv's fraud-prevention program. They called Fiserv's call center posing as cardholders whose debit or credit cards had been restricted for suspected fraud, defeated Fiserv's verification questions, and persuaded Fiserv to remove the fraud restrictions and reactivate the stolen cards. I am aware of at least 18 fraudulent transactions involving FiCare Federal that resulted from this scheme.

7. One affected FiCare Federal cardholder called to complain about the fraudulent transactions and spoke to me on September 16, 2026.

8. I complained to Fiserv about these fraudulent transactions later that day, and Fiserv's response confirmed that the fraudulent caller "successfully completed authentication through the automated system prior to reaching the agent." The help-desk transcript between Fiserv and me on this subject, with personal cardholder information redacted, is attached as Exhibit 2.

9. Compounding this problem, I understand that fraudsters are "alert bombing" cardholders—flooding their phones with text messages so that Fiserv's text-message fraud alert to the legitimate cardholder goes unnoticed. Alert bombing delays the cardholder's discovery of the fraud and gives the fraudster cover to call Fiserv's call center and reactivate the stolen card. The member I spoke to on September 16, 2026 was targeted this way. Because of the alert bombing, she did not notice Fiserv's text messages or calls about the fraudulent activity, and she

did not realize that her card had been used fraudulently in August until she received a letter in the mail stating that her card had been enrolled in Apple Pay and Google Pay.

10. I participate in an email listserv on which other Fiserv client financial institutions reported similar exploitation of Fiserv's call center and stated that they had notified Fiserv. Those institutions include Choice One Community Federal Credit Union, Galaxy Federal Credit Union, MERCO Credit Union, Somerset Federal Credit Union, and Torrington Municipal & Teachers Federal Credit Union. A copy of the email chain regarding this security problem is attached as Exhibit 3. The messages in that chain show the following:

a. According to MERCO Credit Union, it reported to Fiserv that Fiserv's call center was not sending PINs to verify callers.

b. Choice One Community Federal Credit Union also reported the problem to Fiserv and asked Fiserv to deploy multi-factor authentication at its call center.

11. On September 16, 2026, Vanessa Stock of Fiserv responded to these emails. She acknowledged that the credit unions that have raised these security problems "help all of us better understand emerging threats and identify opportunities to further strengthen fraud prevention strategies."

12. Although, Fiserv acknowledged on September 16 that fraudsters are exploiting its call center, Fiserv has not offered a solution or committed to changing its call center verification practices.

13. The next day, FiCare Federal served discovery requests to assess the extent of Fiserv's security deficiencies and the potential fraud and exposure of our cardholders' information. When Fiserv replied that it would respond in due course, FiCare Federal filed an emergency motion on September 23 to expedite responses to its discovery requests given the potential for ongoing fraud against FiCare Federal's cardholders. (Dkt. 63.)

14. Although Fiserv declined to provide expedited discovery, Fiserv's counsel provided a preliminary, informal summary of Fiserv's call center security procedures on the evening of September 24. A copy of that response is attached as Exhibit 4.

15. Fiserv's preliminary, informal response reveals a disturbing fact: a fraudster calling Fiserv's call center can reactivate a stolen debit or credit card without ever speaking to a human being, simply by defeating Fiserv's automated verification system.

16. According to Fiserv's counsel, when a card is suspended for suspicious activity, Fiserv sends a message with a case number and call-back telephone number to the cardholder's listed email address and/or telephone number. When a caller dials Fiserv's call center, an Interactive Voice Response

(IVR) system answers. An IVR system is an automated, robotic system that interacts with callers before they reach a human agent. The IVR robot first evaluates whether the call appears to come from the cardholder's phone number through what Fiserv calls "Automatic Number Identification," "ANI," or Caller ID.

17. I understand, based on the description provided by Fiserv's counsel, that if the caller's Caller ID matches the cardholder's phone number, Fiserv's robot then requests either the case number or the cardholder's Social Security number. Once the caller provides either one, the robot authorizes the caller to approve the fraudulent transactions and reactivate the stolen card.

18. In other words, Fiserv's robot relies on just two things before it accepts a caller as the real cardholder and removes the fraud block: (1) the call appears to come from the cardholder's phone number, and (2) the caller knows either the case number or the cardholder's Social Security number. As explained below, neither is a reliable test of identity.

19. Based on our experience and the experience shared by other Fiserv financial institution clients, fraudsters have repeatedly passed the robot's automated authentication and convinced it to lift fraud restrictions and reactivate stolen debit and credit cards.

20. The first step described by Fiserv's counsel relies on whether the incoming call appears to originate from the cardholder's telephone number. But

Caller ID can be spoofed so that an incoming call displays a telephone number other than the one it actually came from. The FTC has warned businesses for decades that scammers fake telephone numbers and that Caller ID is not proof of a caller's identity. Nearly thirty years ago, the FTC obtained an injunction barring companies from using Caller ID or ANI to verify customers' consent to transactions.[2] The FTC continues to warn businesses that "[s]ince scammers often fake their phone numbers, don't trust caller ID."[3]

21. The second step described by Fiserv's counsel requires either the case number or the cardholder's Social Security number. Social Security numbers and other personal identifiers have been exposed through large-scale data breaches and may be available to identity thieves. Accordingly, possession of a Social Security number does not necessarily establish that the caller is the person to whom that number belongs. In short, both of the robot's identity checks rely on information that a fraudster can fake or easily acquire.

22. The Federal Financial Institutions Examination Council ("FFIEC"), a consortium of federal financial institution regulatory agencies, has recognized that

---

[2] See "FTC Obtains Stipulated Preliminary Injunction in Cramming Case," https://www.ftc.gov/news-events/news/press-releases/1998/06/ftc-obtains-stipulated-preliminary-injunction-cramming-case (last accessed Sept. 28, 2026).

[3] "Scams and Your Small Business: A Guide for Business," https://www.ftc.gov/business-guidance/resources/scams-your-small-business-guide-business (last accessed Sept. 28, 2026).

call centers serving financial institutions are targets for fraud and that the risk requires effective mitigation. Fiserv is aware of this regulatory guidance because FiCare Federal cited it in its complaint (Dkt. 45 ¶ 37 & n.4):

> Threat actors frequently have used social engineering and other techniques to deceive customer call center and IT help desk representatives into resetting passwords and other credentials, thereby granting threat actors access to information systems, user and customer accounts, or confidential information. A comprehensive risk assessment supports mitigation of this risk by identifying emerging threats, setting secure processes, employee training, and establishing effective controls for the customer call center and IT help desk operations.[4]

23. The FFIEC has thus called for far stronger authentication at call centers than Fiserv's robot uses, stating that call centers should apply "[e]nhanced authentication controls . . . to customer and user credential resets, such as sending an OTP [one-time password] to a pre-established communication device; using an authenticator application to provide an OTP; biometric voice recognition; enabling secure video chat features to confirm identity; and call-backs to a pre-established phone number."[5]

---

[4] "Authentication and Access to Financial Institution Services and Systems; Interagency Guidance" at 8 (issued Aug. 11, 2021), https://www.ffiec.gov/sites/default/files/media/press-releases/2021/authentication-and-access-to-financial-institution-services-and-systems.pdf (last accessed Sept. 28, 2026).

[5] *Id.*

24. The FFIEC does not authorize Caller ID or a Social Security number as among the acceptable "enhanced authentication controls" for a call center serving financial institutions.

25. As of the date of this declaration, Fiserv has not informed me that it has disabled the robot or otherwise stopped unauthorized callers who defeat those authentication steps from having fraud restrictions removed from stolen cards. Given the incidents FiCare Federal has already experienced, I am concerned that other FiCare Federal cardholders and accounts remain exposed to the same fraud. Each further incident risks more unauthorized transactions, lost funds, compromised member information, disrupted account access, and lost member confidence in FiCare Federal's ability to protect them.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 28, 2026

FICARE FEDERAL CREDIT UNION

By: Ashley Magill
Senior Vice President
Lending and Operations



Doc ID: 7420ce972ea74429781152e85bb0ada8fdf01bf8