# EXHIBIT 4

Outlook

**Re: FiCare - Emergency Discovery Requests Regarding Recent Fraud**

**From** Patterson, Tim <TJPatterson@foley.com>
**Date** Thu 9/24/2026 5:15 PM
**To** Charles Nerko <cnerko@nerko.com>
**Cc** John C. Cleary <jcleary@nerko.com>; Walter E. Swearingen <wswearingen@nerko.com>; Neil Diskin <ndiskin@nerko.com>; Darrin Quam <dquam@stearnsweaver.com>; Lori Feldman <lfeldman@hechtpartners.com>; Tiffany Wong <twong@hechtpartners.com>; Swanson, Joe <joe.swanson@foley.com>; House, Bryan B. <BHouse@foley.com>; Wronski, Andy <AWronski@foley.com>; Lampert, Elysia A. <ELampert@foley.com>; Grabowski, Ashley C. <agrabowski@foley.com>; Stippich, Grace E. <gstippich@foley.com>

Charles:

We have had the opportunity to gather additional information about the issue raised in your September 17 email and write to share our initial findings. Given your communications regarding the apparent exigency of the situation, these findings are preliminary and based on our review to date. We understand that the concern raised in your email below relates to the ability of an unauthorized person to call into Fiserv's call center and satisfy the necessary verification procedures to unfreeze a card that is subject to a fraud hold. We therefore share information below regarding the verification procedures that a caller confronts when dialing into the call center before the caller may unfreeze a FiCare member's card that is the subject of a fraud hold. We also require and request additional information related to the specific "18 fraudulent transactions" referenced in your email below, which will facilitate Fiserv's ability to review these individual cases.

**Verification Process**

There are different situations that may lead to a cardholder's card being "frozen" due to potential fraud.

***First***, a cardholder may report the card as stolen. In this scenario, the stolen card is deactivated. A cardholder may not reactivate a deactivated card by calling into the call center and must wait for a new card to be reissued or contact the credit union.

***Second***, a card may be frozen due to a suspicious transaction. When Fiserv's risk team identifies a suspicious transaction, that transaction may be temporarily blocked. The cardholder receives an EnFact alert notifying the cardholder of the suspicious transaction, which is delivered to the cardholder's listed email address and/or phone number. That alert provides the cardholder with a unique case number associated with the suspicious transaction and with a phone number that the cardholder may call to confirm whether the transaction is genuine or fraudulent. That call-in phone number is not static. When someone attempts to call the call center to confirm whether the transaction is genuine or fraudulent, the caller is first confronted with EnFact's Integrated Voice Response (IVR) system. The EnFact IVR assesses three pieces of information before authenticating the caller. First, the IVR relies on Automatic Number Identification (ANI), which assesses whether the caller called *from* the right number: the phone number associated with the cardholder's account. Second, the IVR assesses whether the caller called *into* the right number: the phone number provided to the cardholder in the alert identifying the suspicious transaction, which, again, is not static from alert to alert. Third, the IVR requires the caller to type in the case number provided to the cardholder in the alert identifying the suspicious transaction; alternatively, the caller may provide the cardholder's full SSN. If those three pieces of information are correct, the caller may validate the transaction through the IVR system, and the card will be unfrozen. But if any one of those three pieces of information is incorrect or not provided, or if the caller does not validate the transaction through the IVR system, the call is then routed from EnFact to the Contact Center.

At the Contact Center, the caller is confronted with another authentication process. For debit cards, this authentication process begins with the Contact Center's own IVR system, which attempts to authenticate the caller before the caller

reaches an agent. If so authenticated, the agent requires only the caller's name. If the IVR system was unable to successfully authenticate the caller, the agent performs the authentication during the call. For credit cards, the IVR system immediately routes the caller to an agent, and that agent performs the authentication process. In either case, the Contact Center (via an agent or the IVR) first determines whether additional verification is required before validating the transaction by assessing whether the caller provided the correct case number to EnFact at the previous step (and, for debit cards, also assessing whether the ANI matches the cardholder record). Again, that case number is a unique identifier provided to the cardholder's listed email address and/or phone number along with the EnFact alert. If additional verification is required, the additional verification method depends on the credit union's chosen configuration: OTP or non-OTP. For an OTP client, the caller must be verified at the Contact Center through delivery of an OTP to the cardholder, which is delivered via email, text message, or a voice call. For a non-OTP client, the caller is verified through standard authentication, which relies on a combination of tokens related to the cardholder's account. For either type of client, if the case number is missing, the caller must also provide the cardholder's full SSN to locate that case number. If the caller fails the additional verification, the cardholder will be referred to the financial institution.

As we presume FiCare is aware, FiCare has chosen to be configured as a non-OTP client. If FiCare would prefer to be configured as an OTP client, please let us know, and Fiserv is happy to make this change promptly.

**Alleged Fraudulent Transactions**

Without additional information, we are unable to provide case-specific findings as to the "18 fraudulent transactions" that you claim occurred at FiCare in August. We are uncertain what you mean by "18 fraudulent transactions." Please clarify. Please also provide the following information for each transaction, so Fiserv may identify the transaction and related case details and pursue additional inquiry as needed:

1. the cardholder's name;
2. the account number;
3. the case number associated with the transaction;
4. the date and amount of the transaction; and
5. whether the transaction was fraudulent.

**FiCare's Emergency Motion**

We were disappointed to see that FiCare opted to file an emergency motion yesterday rather than work with Fiserv directly to resolve its apparent concerns. As noted in our communication below (just a few business days before the motion was filed), we were working with our client to gather the requisite information, so we could share accurate findings. We have now done that.

Among its many other deficiencies, FiCare's motion fails to comply with the Middle District of Florida's meet and confer requirement. *See* L.R. 3.01(g). It remains our position that the most effective way to resolve true security concerns is through direct communication, rather than jumping to motion practice. The information we have provided should be sufficient to address any claimed "emergency," and we request that FiCare withdraw the motion. If FiCare declines, we will oppose the motion and share this information (and the fact that you chose not to wait for it).

Thank you,
Tim

**Tim Patterson**
*Senior Counsel*

**Foley & Lardner LLP**
Phone: 414.319.7177 | Cell: 262.227.4572