**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FICARE FEDERAL CREDIT UNION,

Case No. 8:26-cv-00231-JLB-GDP

Plaintiff,

v.

FISERV SOLUTIONS, LLC f/k/a
FISERV SOLUTIONS, INC., and
FISERV, INC.,

Defendants.
_______________________________ /

**DECLARATION OF ANDREW SOLTIS**

I, Andrew Soltis, hereby state as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am over 18 years of age, an adult resident of the State of Ohio and am competent to testify as to all matters set forth in this Declaration.

2. I am Director of Risk Solutions Consulting at Fiserv Solutions, LLC ("Fiserv"), and I have worked for Fiserv since December 2005.

3. I submit this Declaration in support of Defendants' Opposition to Plaintiff's Emergency Motion for a TRO and Schedule for a Preliminary Injunction.

4. My responsibilities include overseeing aspects of Fiserv's EnFact Integrated Voice Response system (the "EnFact IVR"), which is involved

in resolving potentially fraudulent transactions attempted on consumers' debit and credit cards.

5. As a result, I am familiar with the configurations that Plaintiff FiCare Federal Credit Union ("FiCare") selected for its members' interactions with the EnFact IVR, including the configurations related to the member authentication process conducted when resolving potentially fraudulent card transactions.

6. When Fiserv's risk team identifies a suspicious transaction, that transaction may be temporarily blocked. The cardholder receives an EnFact alert notifying the cardholder of the suspicious transaction, which is delivered to the cardholder's listed email address and/or phone number.

7. That alert provides the cardholder with a unique case number associated with the suspicious transaction and with a phone number that the cardholder may call to confirm whether the transaction is genuine or fraudulent. That call-in phone number is not static.

8. When an individual responds by calling that number to confirm whether the transaction is genuine or fraudulent, the caller is first confronted with the EnFact IVR. The EnFact IVR assesses three pieces of information before authenticating the caller.

9. First, the EnFact IVR utilizes Automatic Number Identification (ANI), which assesses whether the caller called *from* the right number, *i.e.*, the

phone number associated with the cardholder's account, based on the number maintained in the relevant financial institution's records.

10. Second, the EnFact IVR assesses whether the caller called *into* the right number, *i.e.*, the specific phone number provided to the cardholder in the EnFact alert identifying the suspicious transaction, which, again, is not static from alert to alert.

11. Third, the EnFact IVR requires the caller to provide the case number sent to the cardholder in the EnFact alert identifying the suspicious transaction.

12. If those three pieces of information are correct, the caller may confirm whether the transaction is valid or fraudulent. If valid, the cardholder may validate the transaction through the EnFact IVR system.

13. If any one of those three pieces of information is incorrect or not provided, or if the caller does not validate the transaction through the EnFact IVR system, the call is then routed to the Contact Center.

14. The EnFact IVR system neither requests nor relies on the cardholder's social security number. There is no circumstance in which a caller may resolve a potentially fraudulent card transaction through the EnFact IVR system by calling from the phone number associated with the cardholder's account (ANI) and providing only the cardholder's social security number.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of October, 2026.

*/s/ Andrew Soltis*

Andrew Soltis