**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FICARE FEDERAL CREDIT UNION,

Plaintiff,

Case No. 8:26-cv-00231-JLB-GDP

v.

FISERV SOLUTIONS, LLC f/k/a
FISERV SOLUTIONS, INC., and
FISERV, INC.,

Defendants.
_______________________________ /

**DECLARATION OF CHARLENE BENN**

I, Charlene Benn, hereby state as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am over 18 years of age, an adult resident of the State of Georgia, and am competent to testify as to all matters set forth in this Declaration.

2. I am Senior Director, Client Operations Support at Fiserv Solutions, LLC ("Fiserv"), and I have worked for Fiserv since February 2021.

3. I submit this Declaration in support of Defendants' Opposition to Plaintiff's Emergency Motion for a TRO and Schedule for a Preliminary Injunction.

4. My responsibilities include overseeing aspects of Fiserv's consumer-facing Contact Center product, which is involved in resolving

potentially fraudulent transactions attempted on consumers' debit and credit cards.

5. In calendar year 2026, Fiserv has received a monthly average of 3,410,848 calls into the Contact Center associated with debit and credit cards. At this pace, Fiserv anticipates receiving approximately 40,000,000 calls into the Contact Center associated with debit and credit cards in calendar year 2026.

6. Some calls are routed to the Contact Center from the EnFact Integrated Voice Response system (the "EnFact IVR").

7. In calendar year 2026, Fiserv has received a monthly average of 530,466 calls into the Contact Center from the EnFact IVR. At this pace, Fiserv anticipates receiving approximately 6,000,000 calls into the Contact Center from the EnFact IVR in calendar year 2026.

8. I am familiar with the configurations that Plaintiff FiCare Federal Credit Union ("FiCare") selected for its members' interactions with the Contact Center, including the configurations related to the member authentication process conducted when resolving potentially fraudulent card transactions.

9. At the Contact Center, the caller is confronted with another authentication process. The specific authentication process depends on whether the caller is calling about a debit card or a credit card.

**Debit Cards**

10. For debit cards, this authentication process begins with the Contact Center's own IVR system, which attempts to authenticate the caller before the caller reaches an agent.

11. First, the IVR assesses whether the caller provided the correct case number at the EnFact IVR stage. The case number utilized in this step of the process is a unique identifier that is provided to the cardholder's email address and/or phone number on file at its financial institution at the time the initial EnFact alert is sent notifying the cardholder of the suspicious transaction.

12. If the caller provided the correct case number at the EnFact IVR stage, the IVR then utilizes Automatic Number Identification (ANI), which assesses whether the caller called *from* the right number, *i.e.*, the phone number associated with the cardholder's account, based on the number maintained in the relevant financial institution's records. If the ANI is correct, the caller is authenticated, and the caller is routed to a live Contact Center agent, who requires the cardholder's name to proceed. The cardholder may then validate the transaction through the Contact Center agent. If the ANI is incorrect, the caller is subject to additional authentication, as described in Paragraphs 14 through 19.

13. If the caller did not provide the correct case number at the EnFact IVR stage, the caller is subject to additional authentication at the Contact

Center. Before conducting that additional authentication, the Contact Center must first identify the caller and the relevant card account. This is done by various means. First, the Contact Center IVR will request [redacted]. If the caller provides the correct responses, the caller is identified and is subject to additional authentication, as described in Paragraphs 14 through 19. If either of the caller's responses are incorrect, the caller is transferred to an agent to attempt to identify the caller and the relevant card account before subjecting the caller to additional authentication, as described in Paragraphs 14 through 19. The Contact Center agent will attempt to identify the caller using (a) [redacted] (b) [redacted] (c) [redacted] or (d) [redacted]. If identified, that caller is subject to additional authentication, as described in Paragraphs 14 through 19. If the agent is unable to identify the caller, the agent will refer the caller to the financial institution for further assistance and will not authorize the subject transaction or lift any fraud hold.

14. The additional authentication method employed at the Contact Center depends on the financial institution's chosen configuration: OTP or non-OTP.

15. An "OTP" is a one-time passcode that is delivered to the cardholder by email at the cardholder's email address on file at its financial institution or by text message or a voice call at the cardholder's phone number on file at its financial institution.

16. The financial institution client, not Fiserv, determines whether the client uses OTP in the Contact Center's additional authentication process. This OTP option has been available to FiCare for years. When FiCare selected its Contact Center configurations, it chose not to utilize OTP during the authentication process for debit cards.

17. After FiCare requested a change to that configuration, Fiserv enabled OTP at the Contact Center for FiCare debit cards, effective on October 2, 2026.

18. For a financial institution client that uses OTP, the caller must be authenticated at the Contact Center through delivery of an OTP to the cardholder and the cardholder providing that OTP back to the Contact Center IVR or agent. If the caller provides the correct OTP, the caller is authenticated and may then validate the transaction through a Contact Center agent.

19. For a financial institution client that has not elected to use OTP, the caller is authenticated through standard authentication. When standard authentication is conducted through the Contact Center IVR, it relies on a

combination of tokens associated with the cardholder's account as reflected in the cardholder's file at its financial institution. If the caller provides the correct answers to the combination of tokens, the caller is authenticated and may then validate the transaction through the Contact Center agent. If the Contact Center IVR was unable to identify the caller and transferred the caller to an agent for identification, as described in Paragraph 13, that agent conducts standard authentication following identification. When standard authentication is conducted through a Contact Center agent, it requires [redacted].

20. A caller may not resolve a potentially fraudulent debit card transaction through the Contact Center by calling from the phone number associated with the cardholder's account (ANI) and providing only the cardholder's social security number.

**<u>Credit Cards</u>**

21. For credit cards, the Contact Center IVR routes the caller to a live Contact Center agent, and that agent performs additional authentication as described in Paragraphs 23 through 28 before a caller may validate a transaction.

22. If the caller did not provide the case number at the EnFact IVR stage, before conducting that additional authentication, the Contact Center agent must first identify the caller and the relevant card account. The Contact Center agent will attempt to do so by requesting information associated with the cardholder's account, including information like [redacted]. If the agent is unable to identify the caller, the agent will refer the caller to the financial institution for further assistance and will not authorize the subject transaction or lift any fraud hold. Once identified, that caller is subject to additional authentication.

23. The additional authentication method employed by the Contact Center agent depends on the financial institution's chosen configuration: OTP or non-OTP.

24. An "OTP" is a one-time passcode that is delivered to the cardholder by email at the cardholder's email address on file for its financial institution or by text message or a voice call at the cardholder's phone number on file for its financial institution.

25. The financial institution client, not Fiserv, determines whether the client uses OTP in the Contact Center's additional authentication process. The OTP option has been available to FiCare for years. When FiCare selected its

Contact Center configurations, it chose not to utilize OTP during the authentication process for credit cards.

26. After FiCare requested a change to that configuration, Fiserv enabled OTP at the Contact Center for FiCare for credit cards, effective on October 2, 2026.

27. For a financial institution client that uses OTP, the Contact Center agent must authenticate the cardholder through delivery of an OTP to the cardholder and the cardholder providing that OTP back to the Contact Center agent. If the caller provides the correct OTP, the caller is authenticated and may then validate the transaction through the Contact Center agent.

28. For a financial institution client that has elected not to use OTP, the Contact Center agent conducts standard authentication, which relies on a combination of tokens associated with the cardholder's account as reflected in the cardholder's file for its financial institution. If the caller provides the correct answers to the combination of tokens, the caller is authenticated and may then validate the transaction through the Contact Center agent.

29. A caller may not resolve a potentially fraudulent credit card transaction through the Contact Center by calling from the phone number associated with the cardholder's account (ANI) and providing only the cardholder's social security number.

**FiCare Case Nos. 60-451000419 & 60-453124873**

30. I am aware that Ashley Magill identified two EnFact case numbers in a September 2026 Client360 ticket: 60-451000419 and 60-453124873 (the "Cases").

31. Based on the information available to date, neither of the Cases appear to be associated with transactions validated by the EnFact IVR.

32. Case No. 60-45100419 appears to be associated with a transaction that was resolved at the Contact Center by a live agent.

33. Case No. 60-453124873 appears to have been closed automatically because the associated card was closed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of October, 2026.

*/s/ Charlene Benn*

Charlene Benn